# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VANESSA TAMICHE NAVARRO,

      Petitioner,

v.                           Case No: 8:25-cv-3213-KKM-NHA

PAMELA BONDI, in her official capacity
as Attorney General, et al.,

      Respondents.
_____

## <u>ORDER</u>

Petitioner and noncitizen Vanessa Tamiche Navarro was scheduled to appear for an Order of Supervision (OSUP) check-in appointment at the U.S. Immigration and Customs (ICE) Enforcement Tampa Field Office on Friday, November 21, 2025, at 7:00 a.m. *See* Compl. (Doc. 1) ¶¶ 5–11. Tamiche Navarro's retained counsel communicated to members of the ICE Tampa Field Office that she had a conflict and could not attend her client's appointment, but ICE declined to reschedule. *Id.* ¶¶ 13–18. The day before her appointment, Tamiche Navarro moved this Court for a Temporary Restraining Order "restraining Respondents from requiring Petitioner to appear" without counsel and requiring ICE to reschedule the OSUP appointment. Mot. for TRO (Doc. 2-1) at 1, 8.

Tamiche Navarro's scheduled appointment time passed before the motion was assigned to me, and so I directed her to explain whether her request for emergency relief was moot. (Doc. 5). In response, Tamiche Navarro filed a second motion, this time requesting a TRO "restraining Respondent from finding Petitioner noncompliant with ICE OSUP Standards for refusing to appear at the November 21, 2025 OSUP appointment without counsel," requiring ICE to reschedule the appointment, and "[o]rder[ing] that Petitioner's OSUP status remain unchanged pending the rescheduled appointment." 2d. Mot. for TRO (Doc. 6) at 8. For the following reasons, I deny the motion.

To obtain a TRO, a movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (citation modified). The third and fourth factors "merge when the Government is the opposing party," but in all cases the "the first two factors . . . are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A TRO is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v.*

2

*Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citation modified) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

On the first factor, "a petitioner must demonstrate a substantial likelihood of prevailing on at least one of the causes of action he has asserted." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). This means that "injunctive relief must relate in some fashion to the relief requested in the complaint," *id.*, and cannot "deal[] with a matter lying wholly outside the issues in the suit," *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam); *see Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990) ("Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party.").

Here, Tamiche Navarro's complaint requests injunctive relief enjoining Respondents from requiring her to attend the scheduled appointment, ordering Respondents to reschedule the appointment, and directing Respondents to "[m]aintain [her] current OSUP supervision status pending the rescheduled appointment." Compl. at 6 (Prayer for Relief). The complaint does not contemplate Tamiche Navarro failing to appear, nor does it seek relief related to alleged consequences from doing so. But her second motion now asks to bar ICE from deeming her "noncompliant" for failing to appear. 2d. Mot. for TRO at 3. Because the complaint does not squarely request that relief, I cannot

award Tamiche Navarro a "greater temporary remed[y] . . . than [she] would be entitled to as the ultimate prevailing party." *Gomez*, 899 F.2d at 1127.

In any event, Tamiche Navarro fails to convince that she has a substantial likelihood of success on the merits or that she faces an impending, irreparable harm. Because she cannot satisfy the "most critical" factors necessary for preliminary relief, I do not address the final "merge[d]" factors.

First, Tamiche Navarro does not address this Court's jurisdiction under 8 U.S.C. § 1252(g),[1] which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Section 1252(g) is a "discretion-protecting provision" designed to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). "When 'asking if a claim is barred by § 1252(g), courts must focus on the action being challenged.'" *Camarena v.*

---

[1] She also does not discuss 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." The Attorney General has discretion to revoke an OSUP. *See* 8 C.F.R. § 241.4(l)(2) ("The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section."); *but see Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025) ("[W]hile courts cannot question the discretion that is exercised [to revoke an OSUP], they can address the process used to exercise that discretion.").

*Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020)). In the present context, courts differentiate "between the decision to revoke an OSUP and a failure to follow procedures" in doing so. *See, e.g.*, *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025); *see also Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *3–5 (S.D. Fla. July 8, 2025) (holding that § 1252(g) did not strip the Court of jurisdiction to evaluate whether the government complied with OSUP revocation procedures).

Here, Tamiche Navarro seeks prospective relief barring ICE from finding her noncompliant with the OSUP and from adjusting her OSUP status. She also seeks an order obligating ICE to reschedule her check-in appointment. In my view, this three-headed request "runs headlong into § 1252(g)." *Camarena*, 988 F.3d at 1273. Although it appears speculative whether ICE intends to alter or revoke Tamiche Navarro's OSUP based on her failure to appear, whether to do so amounts to a "decision . . . by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g); *see Barrios*, 2025 WL 2280485, at *4 (finding "that § 1252(g) deprives [the Court] of subject-matter jurisdiction over Respondents' decision to revoke the OSUP"); *see also Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES,

2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) ("ICE's decision to revoke Petitioner's OSUP, a necessary step to execute his removal order, . . . clearly fall[s] under the purview of § 1252(g)."); *see also Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (per curiam) (finding that "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings"). This Court likely lacks jurisdiction to grant the specific relief requested here.

Second, and to the extent that Tamiche Navarro's request avoids § 1252(g) as a "substantive review of the underlying legal bases for [the government's] discretionary decisions and actions," *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006), her claim is doubtful on the merits. Tamiche Navarro argues that ICE violated due process and her rights to counsel under 8 U.S.C. § 1362 and 8 C.F.R. § 292.5(b) by refusing to reschedule her OSUP check-in appointment. *See* 2d. Mot. for TRO at 5–6. Section 1362 provides aliens the "privilege of being represented (at no expense to the Government)" by counsel "[i]n any removal proceedings before an immigration judge." And DHS regulations likewise provide aliens "the right to be represented by an attorney" "[w]henever an examination is provided for" in Title 8, Chapter I of the Code of Federal Regulations.[2] 8 C.F.R. § 292.5(b).

_____

[2] Tamiche Navarro claims that "DHS regulations specify that counsel may appear at any interview unless expressly excluded" and that "OSUP check-ins are not excluded

Indeed, although aliens are entitled to due process of law in deportation hearings under the Fifth Amendment, the Eleventh Circuit has long held that "'an alien must show substantial prejudice' to prevail 'on a due process challenge to a deportation proceeding.'" *Priva v. U.S. Att'y Gen.*, 34 F.4th 946, 954 (11th Cir. 2022).

But assuming that Tamiche Navarro's OSUP check-in qualifies as either a "removal proceeding[]" or "examination" under the above standards,[3] she inadequately alleges either a constructive denial of her rights or resulting "substantial prejudice." Instead, ICE's refusal to reschedule is analogous to the denial of a continuance. Even in the criminal context, though, "a denial of a continuance request will not always amount to a Sixth Amendment violation of a paying defendant's choice of counsel." *United States v. Coleman*, 256 F. App'x 263, 265 (11th Cir. 2007) (per curiam); *see Freza v. Att'y Gen. United States*, 49 F.4th 293, 299 (3d Cir. 2022) (reviewing for abuse of discretion "[t]he question of whether the denial of a continuance constitutes a violation of [an alien's] due process and statutory right to counsel" under 8 U.S.C. § 1362); *cf.*

---

under the regulation." 2d. Mot. for TRO at 5; *see also* Ex. B (Doc. 6) at 20 (arguing that an alien "may be accompanied by counsel 'in any interview' before DHS unless specifically exempted"). 8 C.F.R. § 292.5(b) does not use the specific "interview" language Tamiche Navarro attributes to it, nor does it speak to (non) exemptions.

[3] Although I need not decide this question to determine that Tamiche Navarro is not entitled to emergency relief, I observe that she provides no authority extending either provision to the OSUP check-in appointment context.

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (recognizing that a court may limit a defendant's right to counsel of his choice for many reasons including "the demands of its calendar," or "fairness").

On the facts presented here, ICE's decision appears to be a reasonable effort to manage its supervisory responsibilities. In July 2025, based on Tamiche Navarro's "pending Application to Register Permanent Residence or Adjust Status (Form I-485)," ICE scheduled her appointment for November. 2d Mot. for TRO ¶¶ 12, 14; *see* 8 C.F.R. § 241.5(a)(1) (OSUP may "require[] that the alien report to a specified officer periodically and provide relevant information under oath as directed"). Counsel, based in South Florida, did not ask ICE to reschedule until November 10, less than two weeks before the in-person appointment in Tampa. 2d Mot. for TRO ¶ 17. ICE declined because they "see a lot of aliens every day and are not in the position to constantly move appointment dates." Ex. B. (Doc. 6) at 20. Even so, Tamiche Navarro could still consult with her attorney beforehand and appear with another representative. ICE expressly gave her the latter option. *See* Ex. A. (Doc. 6) at 12 ("Please note that ICE's inability to reschedule the appointment . . . does not negate your client's right to legal representation"); *see also* Ex. B. (Doc. 6) at 20 ("You are more than welcome to send another attorney or representative in her place"). ICE's decision not to reschedule at the last minute did not constitute an abuse of discretion or prejudicial violation of Tamiche Navarro's rights.

8

Finally—and fatally to the TRO request—Tamiche Navarro does not show "that irreparable injury will be suffered if the relief is not granted." *Schiavo*, 403 F.3d at 1225. Although she can seek injunctive relief to prevent future injury, Tamiche Navarro must still "establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citation modified); *see also Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent."). Thus, "*possible* future injury" will not suffice for standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Tamiche Navarro alleges, at most, a speculative risk of "possible future injury." Her complaint and operative motion discuss the risk of appearing at her check-in without counsel, but those risks are moot and cannot support standing. *See* 2d. Mot. for TRO at 6–7. Looking forward, Tamiche Navarro claims that because she did not appear, she "faces being held outside of ICE OSUP Compliance unless this Court intervenes and restrains Respondents from holding Ms. Tamiche Navarro noncompliant." *Id.* at 3. Tamiche Navarro fails to explain what specific harms attach to OSUP noncompliance. And she

does not allege that ICE will penalize her for noncompliance, let alone that it will do so imminently. Nor did ICE promise as much. In declining counsel's demand to reschedule, ICE Officer Angel Gonzalez wrote that Tamiche Navarro's failure to attend "*could* result in significant consequences." Ex. A (Doc. 6) at 12–13. That language accords with the fact that the Attorney General's decision to revoke an OSUP is discretionary, not mandatory. *See* 8 C.F.R. § 241.4(l)(2). And even then, "the alien will be notified of the reasons for revocation of his or her release" and "will be afforded an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1). Ultimately, absent verified allegations or evidence that Tamiche Navarro faces "certainly impending" harm, emergency relief is not warranted, and Tamiche Navarro's complaint must be dismissed for lack of standing.

Accordingly, the following is **ORDERED:**

1.   Tamiche Navarro's Complaint (Doc. 1) is **DISMISSED without prejudice.** She may file an amended complaint no later than **December 9, 2025.**

2.   Tamiche Navarro's Second Motion for a Temporary Restraining Order (Doc. 6) is **DENIED.**

3.   Tamiche Navarro's Motion for a Temporary Restraining Order (Doc. 2) is **DENIED as moot.**

4.   Tamiche Navarro is directed to serve the Complaint and a copy of this Order on Respondents by **December 2, 2025.**

**ORDERED** in Tampa, Florida, on November 25, 2025.

Kathryn Kimball Mizelle
United States District Judge